DENNIS GENE GEHRKE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 10845

July 14, 1980                                613 P.2d 1028

---

*Jeffrey D. Sobel,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert Miller,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

Dennis Gehrke appeals his conviction for robbery with the use of a deadly weapon. Gehrke asserts two grounds for

reversal: (1) the pretrial identification was unduly suggestive and unreliable, and (2) the prosecutor's opening remarks gave rise to an improper inference of prior criminal activity by Gehrke. We affirm.

At about 3:15 a.m. on September 21, 1977, a Las Vegas gas station attendant was robbed at gun point. He and his girl-friend were the only witnesses to the crime. The police were summoned. The victim described the robber as 5'9", 135–140 pounds, with sandy-colored hair and brownish-green eyes. The eyewitness described the man as having brownish hair and light green eyes. Both reported that the robber wore blue jeans, a yellow windbreaker, and a blond wig, and that he ran in an awkward manner. They noted the direction he ran and where he was last seen. The police gave to the victim and the eye-witness different mugshot books. Each one chose a photo that was similar in appearance to the robber. Based upon the descriptions and the similar-looking mugshots, an officer sus-pected that Gehrke was the robber.

In the meantime, an officer and dog from the K–9 division began to search on foot for the robber, beginning at the corner where the robber was last seen. The dog behaved "differently" when they neared the Gehrke house; therefore, the officer decided to watch the house. Shortly thereafter, a man matching the eyewitness description, but not wearing a wig or wind-breaker, drove up to the house, staggered to the front door, and entered.[1] The officer radioed that he had located a suspect.

The eyewitnesses were taken to the Gehrke house to identify a suspect. Gehrke was brought outside and placed in front of the headlights of the police car in which the eyewitnesses were sitting. Although he was not wearing a yellow windbreaker or blond wig, each eyewitness positively identified Gehrke as the robber. The victim also recognized a leather holster found in the Gehrkes' Fiat as similar to the one carried by the robber.

## I.

Gehrke argues that the pretrial identification at his house was unduly suggestive and that, therefore, the trial court erred by admitting testimony describing the identification.

The pretrial identification preceded formal charges and, therefore, the case is governed by the standard enunciated in Stovall v. Denno, 388 U.S. 293 (1967). Jones v. State, 95 Nev. 613, 600 P.2d 247 (1979). The test is whether, considering all

---

[1]Gehrke's father testified that he had gone to the store for some medicine at approximately 3:30 a.m.

the circumstances, "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellant] was denied due process of law". *Stovall,* 388 U.S. at 301–302; Manson v. Braithwaite, 432 U.S. 98 (1977); *Jones,* 95 Nev. 613. Short of that, it is for the jury to weigh the evidence and assess the credibility of the eyewitnesses. *Id.;* Wise v. State, 92 Nev. 181, 547 P.2d 314 (1976).

A review of the circumstances in this case reveals that the identification procedure was unnecessarily suggestive. The eyewitnesses were escorted by an officer to Gehrke's home after being told that the police had a suspect in mind. Gehrke was positioned in front of the headlights of the squad car and identified by the two eyewitnesses who were seated together in the back seat of the car. Because there were no exigent circumstances, the procedure was unnecessary.[2]

Despite the unnecessarily suggestive procedure, the key question is whether the identification was reliable. *Manson,* 432 U.S. at 114; *Jones,* 95 Nev. 613. The factors to be weighed against the corrupting effect of the suggestive procedure were set forth in Neil v. Biggers, 409 U.S. 188 (1972), and include the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

In this case, each witness had an opportunity to clearly see the robber's face during the holdup. They described the robber as slender, with high cheek bones, sandy-colored hair, and green eyes.[3] Each one testified that at the time of the identification there was no doubt that Gehrke was the robber. Finnally, the confrontation took place within an hour of the crime. These factors indicate that the identification was reliable. There was no denial of due process.

## II.

During his opening statement, the prosecutor stated that an officer had developed Gehrke as a suspect based upon the

---

[2]This court has recognized countervailing policy considerations that may justify prompt confrontations, such as fresher memory and exoneration of innocent suspects. *Jones,* 95 Nev. 613; Banks v. State, 94 Nev. 90, 575 P.2d 592 (1978).

[3]At trial, Gehrke testified that he has blue eyes and is taller than the victim had estimated.

description given by the witnesses and "the fact that [the officer] knew that Mr. Gehrke, the defendant, lived in the area, and knew him from prior occasions". Later in the trial, the officer testified that he had seen Gehrke prior to September 21, 1977, the date of the crime. Gehrke contends that the only logical inference to be drawn from those statements is that he was involved in criminal activity prior to the robbery.

Evidence of other crimes is admissible only for certain specified purposes (NRS 48.045(2)) and only if its probative value outweighs its prejudicial effect (NRS 48.035(1)). Otherwise, it is improper for a prosecutor to imply that a defendant was engaged in prior criminal activity. *See* Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976); Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962).

In this case, any inference of criminal activity is not at all obvious. The officer also testified that he knew where Gehrke's parents lived, which suggests that he could have been a friend of the Gehrke family. Furthermore, Gehrke himself testified that he was convicted of robbery in 1972. Taken in the context of the entire case, the challenged statements did not prejudicially affect Gehrke's substantial rights. Gehrke was not denied a fair trial and it was not error to deny his motion for mistrial. NRS 47.040; Berger v. United States, 295 U.S. 78 (1935); United States v. Houde, 596 F.2d 696 (5th Cir. 1979); *cf. Theriault,* 92 Nev. at 190 (inference of criminal activity harmless in view of overwhelming evidence of guilt).

Finding no error, we affirm the judgment of conviction.

THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

MOWBRAY, C. J., concurring:

I fully concur with the views expressed in the opinion of my Brother BATJER. I write separately to emphasize my concern with the constitutional problems raised by suggestive identification procedures.

Under the applicable due process standards we are required to weigh the factors in favor of the reliability of an identification, Neil v. Biggers, 409 U.S. 188, 198 (1972), against "the corrupting effect of the suggestive identification itself." Manson v. Braithwaite, 432 U.S. 98, 114 (1977). Factors indicating the reliability of the identification are present in this case, *ante* at 3. The procedure used, however, was suggestive. The witnesses were taken to appellant's home at four in the morning, after police officers had indicated that appellant fit the description the witnesses had given; appellant was escorted before the headlights of a police car in the company of police officers; the

witnesses were seated together in the back seat of the police car, where their initial reaction, whether correct or not, could be reinforced. This procedure was suggestive, Neil v. Biggers, 409 U.S. at 198; and since there was no emergency, *see* Stovall v. Denno, 388 U.S. 293, 302 (1967), or other exigent circumstances, this increased possibility of misidentification was gratuitous as well. Manson v. Braithwaite, 432 U.S. at 109.

While the factors indicating the reliability of the identification in this case outweigh the possible corrupting effect of the suggestive procedure, I am disturbed by the testimony in the record which suggests that this sort of procedure is commonplace.

I believe that unnecessarily suggestive identification procedures may not be tolerated if this Court is to continue to deal with these cases on an *ad hoc* basis, assessing the totality of the circumstances of each case, rather than by enforcing rules when such procedures are employed. See Manson v. Braithwaite, 432 U.S. at 111-112. The economic and societal costs incident to these procedures are substantial: judicial time and resources are expended in processing these appeals, and otherwise valid convictions are called into question. We cannot ignore such procedures.

In short, I believe that the administration of criminal justice would be well served if procedures which are either unduly or unnecessarily suggestive are avoided.[1] If followed, this appeal and many others similarly grounded would not therefore be taken.

---

[1] While formal line-up procedures are not necessary in all situations, *see* ALI Model Code of Pre-Arraignment Procedure §§ 160.1 and 160.2 (1975); Manson v. Braithwaite, 432 U.S. at 111; the identification procedures should be as free of suggestion as possible.