OPINION
 

 Per Curiam:
 

 In 1985, appellant Paul Lewis Browning robbed and stabbed to death Hugo Elsen. A jury convicted Browning of first-degree murder and various other offenses and sentenced him to death. We affirmed Browning’s convictions and death sentence on direct appeal.
 
 [2]
 
 Browning unsuccessfully sought post-conviction relief in the district court. On appeal, this court concluded that the district court erred by denying Browning’s claim that counsel was ineffective for not challenging a jury instruction defining the aggravating circumstance of depravity of mind and remanded for a new penalty hearing.
 
 [3]
 
 At the conclusion of the second penalty hearing, the jury again sentenced Browning to death.
 

 Browning raises several issues on appeal, none of which we conclude warrant relief. Accordingly, we affirm Browning’s sentence of death.
 

 FACTS
 

 Browning robbed and stabbed to death Hugo Elsen in Elsen’s jewelry store in Las Vegas and absconded with several pieces of jewelry. Browning was charged with burglary, robbery with the use of a deadly weapon, murder with the use of a deadly weapon,
 
 [4]
 
 and escape.
 
 [5]
 
 The State sought the death penalty. Finding Browning
 
 *522
 
 guilty of Elsen’s murder, along with the other charged offenses, the jury imposed death, and we affirmed the convictions and death sentence.
 
 [6]
 
 However, this court subsequently granted Browning post-conviction relief and remanded his case for a second penalty hearing.
 

 During the second penalty hearing, the State called several witnesses and introduced testimony, documents, and photographs presented during the guilt phase of the original 1986 trial to detail to the jury the facts of Browning’s crimes. In particular, Dr. Giles Green, the forensic pathologist who performed Elsen’s autopsy, described the presence of six stab wounds, including a fatal stab wound to Elsen’s heart. Las Vegas Metropolitan Police Department Detectives Robert Leonard and Michael Bunker explained the course of the murder investigation and Browning’s eventual apprehension.
 

 The State also introduced the prior trial testimony of Randall and Vanessa Wolfe who lived in the same motel as Browning and his girlfriend, Marsha Gaylord. On the day of Elsen’s murder, Randall walked into his motel room and found Browning sitting on the bed. Browning had numerous rings, watches, and chains strewn on the bed in front of him. Browning told Randall that he wanted to use the jewelry to bail Gaylord out of jail and that he had killed Elsen. Telling Browning that he was going to get heroin, Randall left his motel room to report Browning to the police. Randall ran into Vanessa as he was exiting the motel and told her to stay with Browning and keep him calm until Randall returned with the police. While Randall sought police assistance, Vanessa helped Browning cut the tags off of the jewelry. Browning gave her one of the stolen rings and asked Vanessa to dispose of a knife, which she did and later turned over to the police. Browning also told Vanessa that he needed to “get rid of this stuff” because he had just killed someone. Shortly thereafter, Randall returned with the police and Browning was apprehended. After the police searched his motel room, Randall and Vanessa discovered additional jewelry in a cup under the sink and reported the discovery to the police. However, Randall kept two rings and a watch.
 

 The State also presented several witnesses to establish Browning’s prior felony convictions and that he was on parole on November 8, 1985, when he murdered Elsen. In particular, the State introduced evidence respecting Browning’s prior criminal record, which revealed that he had incurred three convictions for robbery and convictions for receiving stolen property and grand theft person. Evidence also showed that Browning had been arrested for grand theft auto. The State presented the testimony of two victims whom Browning and another man robbed at knife-
 
 *523
 
 point. And law enforcement officers testified about Browning’s robbery convictions, detailing the facts and circumstances of the events.
 

 Additionally, the State presented victim impact testimony. Elsen’s son Andrew testified that his father immigrated to the United States from Switzerland and that his father and mother opened the jewelry store in 1954. Andrew testified that Elsen’s murder devastated Elsen’s wife. After the murder, Andrew received a discharge from the Army and moved to Las Vegas to run the jewelry store until it closed about four years after Elsen’s murder. Andrew further testified that as a result of his father’s murder, he felt trapped in Las Vegas, unable to leave and pursue the life he wanted for himself.
 

 Browning called several witnesses in mitigation. Browning’s relatives described him as fun-loving, happy, smart, and curious. Browning’s sisters, brother, and cousin testified that Browning was a positive influence in their lives and that he was an inspiration to them during difficult times. Browning’s relatives also testified that they would always maintain contact with him. One of Browning’s sisters testified that executing Browning would devastate their mother. Browning’s mother, Betty, testified that Browning was a supportive and obedient child and that Browning had worked as a congressional doorman. Betty further testified that she loved Browning and that he meant everything to her. She also stated that she intended to maintain contact with him and looked forward to visiting him. Browning did not make a statement in allocution.
 

 Browning submitted several mitigating circumstances for the jury’s consideration, including that he had spent approximately 20 years in prison, he had a successful childhood, he had a relationship with his family, he was a valuable member of his extended family, the Wolfes were involved in the crimes, Randall Wolfe received benefits from the State, and “any other mitigating circumstance.’ ’
 

 The State alleged four aggravating circumstances: the murder was committed during the commission of or attempt to commit a burglary,
 
 [7]
 
 the murder was committed during the commission of or attempt to commit a robbery,
 
 [8]
 
 the murder was committed by a person who had previously been convicted of a felony involving the use or threat of violence to the person of another,
 
 [9]
 
 and the murder was committed by a person under a sentence of imprisonment.
 
 [10]
 
 The jury found all four aggravating circumstances beyond a reasonable doubt and no mitigating circumstances. The jury further
 
 *524
 
 found unanimously and beyond a reasonable doubt that the aggravating circumstances outweighed any mitigating circumstances and imposed a sentence of death.
 
 [11]
 

 DISCUSSION
 

 Browning argues that his penalty hearing was unfair on several grounds, which, individually and cumulatively, entitle him to relief. We conclude that none of his arguments have merit and therefore we affirm the death sentence.
 

 Introduction of alleged false and misleading evidence
 

 Browning argues that the district court erred in precluding him from presenting evidence developed during post-conviction proceedings indicating that a host of evidence adduced at the original trial was false or misleading.
 

 Evidence related to Randall and Vanessa Wolfe
 

 At the penalty hearing, the State introduced Randall Wolfe’s entire testimony from the first trial, including his statement that Browning’s girlfriend Marcia Gaylord was in jail and Browning robbed Elsen because he needed bail money. Evidence developed during post-conviction proceedings revealed that Gaylord had been released from jail on the morning of Elsen’s murder. To the extent Browning argues that the post-conviction evidence discredited the State’s suggestion that he committed the crimes to secure bail money for Gaylord, the evidence was irrelevant to the penalty hearing, as Browning’s guilt had already been determined. Moreover, this court noted in Browning’s appeal from the denial of his post-conviction habeas petition that even if counsel could have established that Gaylord was not in jail on the afternoon of the crimes, Browning failed to show prejudice because he conceded that Gaylord had only been released from jail on the morning of the crimes, suggesting that Browning may not have known of her release, and because the motive was not crucial to the State’s case.
 
 [12]
 
 We conclude that Browning fails to explain how evidence that Gaylord was not in jail when the crimes were committed mitigated his involvement or disproved any aggravating circumstance.
 

 
 *525
 
 Browning further complains that Randall testified untruthfully at the first trial that he had not received any benefit from the State in exchange for his testimony. Browning directs our attention to the prosecutor’s testimony at the post-conviction evidentiary hearing that at the time of Browning’s trial, Randall was a defendant in a separate criminal prosecution and that after Browning’s trial the prosecutor informed the judge assigned to Randall’s prosecution that Randall had assisted in Browning’s prosecution.
 
 [13]
 
 The prosecutor further stated that after Browning’s trial, he assisted Randall in securing a job. The prosecutor testified that he promised no benefits to Randall or Vanessa Wolfe before they testified at Browning’s original trial. We concluded in Browning’s appeal from the post-conviction habeas proceedings that this information should have been disclosed to the defense pursuant to
 
 Brady v.
 
 Maryland
 
 [14]
 
 but that there was not a reasonable probability that the result of Browning’s trial would have been different.
 
 [15]
 
 We conclude that any assistance the prosecutor provided to Randall, which the evidence shows occurred after Browning’s original trial, was not of such import that its absence from the jury’s consideration rendered Browning’s penalty hearing unfair. Therefore, we conclude that relief is not warranted in this regard.
 

 Browning also argues that the district court erred by not allowing him to introduce evidence in the second penalty hearing that Vanessa had received benefits for her testimony. However, nothing in Browning’s submissions to this court adequately substantiates this claim.
 

 Similarly, we reject Browning’s claim that he is entitled to a new penalty hearing because Vanessa was likely under the influence of drugs when she testified at trial. Even assuming such evidence had been presented to the penalty-phase jury, Browning fails to adequately explain how it would have changed the outcome. Moreover, Vanessa’s drug abuse was extensively explored at Browning’s original trial, and her trial testimony was presented to the jury during the second penalty hearing.
 

 Browning next argues that a police detective’s testimony during the second penalty hearing that the only aid he provided the Wolfes was assistance in entering a rehabilitation program was misleading in light of overwhelming evidence showing that the Wolfes received
 
 *526
 
 extensive benefits for their testimony. Vanessa corroborated the detective’s testimony to the extent that she acknowledged that although the detective assisted her and Randall in enrolling in a rehabilitation program, she received no assistance in paying for the program. We conclude, however, that this assistance was not so significant that had it been presented to the jury, the result of the penalty hearing would have been different.
 

 Even assuming that the district court erred in refusing to allow Browning to introduce the evidence explained above, we conclude that he has not demonstrated prejudice. To the extent Browning argues that the evidence outlined above suggested that he was not the individual who stabbed Elsen, relief is not warranted because he had already been found guilty and such evidence was not relevant to the sentencing decision.
 

 The focus of a capital penalty hearing is not the defendant’s guilt, but rather his character, record, and the circumstances of the offense.
 
 [16]
 
 Such considerations are relevant to the jury charged with imposing a penalty for a capital crime.
 
 [17]
 
 This principle was affirmed in
 
 Oregon
 
 v. Guzek.
 
 [18]
 
 In Guzek, the United States Supreme Court held that a capital murder defendant had no constitutional right to present additional alibi evidence at resentencing that was inconsistent with his prior conviction and shed no light on the manner in which he committed the crime for which he was convicted.
 
 [19]
 
 Although we have not yet addressed Guzek, in
 
 Homick v. State,
 
 we held that ‘ ‘there is no constitutional mandate for a jury instruction in a capital case making residual doubt a mitigating circumstance.”
 
 [20]
 
 More recently, in
 
 McKenna v. State,
 
 we rejected an argument that the defendant was entitled to a residual doubt instruction at his second penalty hearing because the second jury had not determined his guilt.
 
 [21]
 
 We reasoned that although “the penalty phase jury was composed of entirely different jurors than the guilt phase jury, a lingering doubt over [the defendant’s] guilt
 
 *527
 
 is still not an aspect of his character, record, or a circumstance of the offense.”
 
 [22]
 

 Although
 
 Homick
 
 and
 
 McKenna
 
 concern residual doubt instructions, they are instructive respecting Browning’s apparent desire to challenge his guilt at the second penalty hearing.
 
 Homick
 
 and
 
 McKenna
 
 echo the general tenet that the focus of a penalty hearing is the defendant’s character and record and the circumstances of the offense, not the defendant’s guilt or innocence, as that matter has been decided. We conclude that
 
 Guzek
 
 applies in this instance and precluded Browning from presenting evidence contradictory to the trial jury’s finding that he stabbed Elsen. Accordingly, to the extent that Browning argues that the evidence described above cast doubt on his guilt, we conclude that it was irrelevant in the penalty hearing.
 

 To the extent Browning argues that the evidence outlined above was relevant mitigating evidence, we conclude that he has not demonstrated prejudice even if the district court erred in this regard. The Wolfes’ credibility was extensively challenged at trial. Throughout the second penalty hearing, Browning suggested that the Wolfes were involved in the crimes, as evidenced by the fact that Randall had pocketed several pieces of jewelry stolen from Elsen’s store. Browning further argued that it was grossly unfair that the Wolfes had not been charged with any offense stemming from Elsen’s murder. Additionally, the Wolfes’ drug abuse and prior criminal activities were explored at the original trial, and the jury at the second penalty hearing was privy to this information. We conclude that the evidence Browning now contends should have been presented at the second penalty hearing is not of such significance that it rendered his penalty hearing unfair.
 

 Other evidence alleged to have been false and misleading
 

 Browning argues that the district court erred in allowing the State to introduce false and misleading evidence concerning: (1) Elsen’s description of the individual who stabbed him, (2) Josy Elsen’s identification of Browning as the person who stabbed her husband, (3) bloodstains found on a tan leather jacket belonging to Browning, (4) Browning’s fingerprints found at the crime scene, (5) the recovery of a watch found in the motel room where Browning was arrested, and (6) bloody shoeprints found at the crime scene. Browning argues that he suffered prejudice from the State’s repeated use of this allegedly false and misleading evidence because it was' relevant to the aggravating circumstances alleged by the State and the mitigating evidence he intended to present. However, Browning fails to adequately explain its relevance to
 
 *528
 
 his case in mitigation. Rather, Browning appears to argue that if he had been allowed to challenge the reliability of this evidence during the second penalty hearing, it would have cast doubt on his conviction. However, as explained above, pursuant to
 
 Guzek,
 
 Browning was not entitled to challenge his conviction in this manner in the second penalty hearing.
 

 Evidence relevant to proving aggravating circumstances
 

 Browning argues that the district court precluded him from presenting evidence relevant to the robbery and burglary aggravating circumstances.
 
 [23]
 
 In particular, he contends that he wanted to present evidence at the penalty hearing that the Wolfes retained some of the jewelry stolen from Elsen’s store and that Randall Wolfe wore some of the stolen jewelry at the preliminary hearing. Browning asserts that this evidence would have established the Wolfes’ involvement in the robbery and that they were guilty of felony murder. Browning also contends that the new evidence adduced in post-conviction proceedings lent support to his theory that the Wolfes planned the robbery with an unknown Cuban man and that the Cuban man was the individual who stabbed Elsen. Browning argues that because this new evidence showed that he was not the actual killer, the State failed to satisfy NRS 200.033(4)(a) and (b), which require the State to prove that the murder was committed during the course of a robbery or burglary and the person charged “killed or attempted to kill the person murdered” or “knew or had reason to know that life would be taken or lethal force used.” Therefore, according to Browning, the jury improperly found the burglary and robbery aggravating circumstances. We disagree.
 

 Testimony and evidence was introduced at the second penalty hearing respecting the facts and circumstances surrounding the charged crimes from which the penalty hearing jury could conclude beyond a reasonable doubt that Browning killed Elsen for purposes of satisfying the elements of the burglary and robbery aggravating circumstances. Browning was allowed to argue that the Wolfes were involved in the charged crimes, and the evidence considered by the second penalty hearing jury showed that Randall kept several pieces of the stolen jewelry. Moreover, establishing Randall’s participation in Elsen’s murder under a felony-murder theory would not have absolved Browning’s culpability under NRS 200.033(4).
 

 Respecting his theory that an unidentified' Cuban man planned the robbery and murdered Elsen, Browning fails to identify what evidence he desired to introduce that supported this theory. Accordingly, we conclude that no relief is warranted on this claim.
 

 
 *529
 

 Reconsideration of harmlessness respecting the admission of improper evidence during guilt phase
 

 In our opinion affirming the district court’s denial of Browning’s post-conviction habeas petition, we noted two deficiencies in trial counsel’s representation: counsel’s failure to discover and present evidence that the victim’s description of the perpetrator’s hair did not match Browning’s hair and counsel’s failure to object to the prosecutor’s improper statement linking Browning to prostitution.
 
 [24]
 
 We further noted the prosecutor’s failure to divulge benefits Randall Wolfe received for his testimony and the prosecutor’s unfounded inference that blood on Browning’s coat could have been the victim’s.
 
 [25]
 
 Nonetheless, we concluded that there was no reasonable probability that Browning would not have been convicted of first-degree murder because the evidence of his guilt was overwhelming.
 
 [26]
 
 In particular, Browning’s fingerprints were found at the crime scene, three witnesses placed him at or near the crime scene, he admitted his guilt to the Wolfes, and he was present in a hotel room surrounded by jewelry stolen from Elsen’s store.
 
 [27]
 

 Browning invites this court to reconsider our conclusion that he was not prejudiced by the errors noted above in light of the State’s inability to present its case at the second penalty hearing without reference to evidence later determined at the post-conviction evidentiary hearing to be false and misleading. Browning requests this court to vacate the judgment of conviction and grant him a new trial. Although not entirely clear, it appears that Browning believes that he should be granted a new trial to determine his guilt. We have carefully considered Browning’s arguments in this regard and conclude that we correctly determined that overwhelming evidence supports Browning’s murder conviction. Therefore, we decline Browning’s invitation to revisit this matter and grant relief.
 

 Jurisdiction of senior judge to preside over Browning’s second penalty hearing
 

 Browning argues that his judgment of conviction is void because the senior judge presiding over the second penalty hearing was not properly appointed and that no statute or rule allows for the appointment of a retired judge to preside over a capital trial. However, we find nothing in SCR 250 that precludes the appointment of senior judges to preside over capital trials. Nor do we conclude
 
 *530
 
 that the senior judge presiding over Browning’s penalty hearing was improperly appointed. Therefore, we reject this claim.
 

 Removal of juror for cause
 

 Browning argues that the district court erred in removing a juror for cause. The jury voir dire transcript reveals that the subject juror initially stated that he was opposed to the death penalty on religious grounds. Immediately thereafter, the juror acknowledged that he could foresee a case where the death sentence would be appropriate. When presented with a series of hypothetical circumstances, however, the juror acknowledged that he could impose death in some situations but not in others. The district court eventually interjected and asked the juror whether he could consider the death penalty in a case where, as here, the defendant was convicted of first-degree murder by entering a jewelry store, stealing jewelry, and stabbing the owner to death. The juror responded that he could not impose death in that circumstance. The prosecutor challenged the juror for cause. Defense counsel objected, arguing that the juror only expressed a reservation about rendering a death verdict in certain cases. The district court determined that the challenge was proper and excused the juror.
 

 Browning argues that the district court erred by asking the juror to prejudge the merits of the case and in dismissing the juror for cause. Great deference is afforded to the district court in ruling on challenges for cause primarily because such decisions involve factual determinations and the district court may observe a prospective juror’s manner.
 
 [28]
 

 In
 
 Bean v. State,
 
 this court noted that for a juror to be dismissed for cause based on the juror’s opposition to the death penalty, “[i]t must appear from the record that the prospective juror is unable to return a death sentence no matter what may be the facts of the case.”
 
 [29]
 
 Since
 
 Bean,
 
 however, we have not strictly followed its mandate that a prospective juror must express his steadfast opposition to the death penalty regardless of the facts of the case to justify removing the juror for cause. For example, in
 
 Leonard
 
 v.
 
 State,
 
 we upheld the district court’s removal of a prospective juror who “explained that she could ‘probably’ consider the death penalty in some situations and that it could be ‘occasionally’ appropriate but ‘probably in very few circumstances.’ ”
 
 [30]
 
 Similarly, in
 
 *531
 

 Walker
 
 v.
 
 State,
 
 we upheld the district court’s removal for cause of a prospective juror who indicated that he could only impose the death penalty in “John Gacy-type” situations, concluding that the juror expressed an unwillingness to impose a sentence of death in the case at bar.
 
 [31]
 

 Here, the juror stated that he could consider the death penalty in a case that involved “the worst of the worst,” but not in a case such as Browning’s.
 
 [32]
 
 The record supports the district court’s conclusion that the juror’s opposition to the death penalty would have prevented or substantially impaired the performance of his duties as a juror.
 
 [33]
 
 Based on the juror’s insistence that he could not render a death verdict in Browning’s case, we conclude that the district court did not abuse its broad discretion in this regard.
 

 Mitigation verdict form
 

 After the jury returned its verdict, Browning filed a motion for clarification, alleging that two of the four verdict forms were not given to the jury — one of the alleged missing verdict forms listed six potential mitigating circumstances and the other allowed the jury to find that the mitigating circumstances outweighed the aggravating circumstances and impose a sentence other than death. The district court conducted an evidentiary hearing on the matter wherein two district court clerks, the bailiff, the jury foreman, and the prosecutor testified respecting the handling of the verdict forms.
 

 The district court entered written findings of fact and conclusions of law, in which it determined that the jury had all four jury verdict forms. The district court concluded that because the jury had all of the verdict forms, it need not reach the issue of prejudice. Nonetheless, the district court found that even if the mitigating circumstances verdict form was not submitted to the jury, its verdict would not have been different because the jury foreman testified that the jury had the list of mitigating circumstances Browning proffered.
 

 A district court’s findings of fact are entitled to deference and will not be disturbed on appeal if they are supported by substantial evidence.
 
 [34]
 
 Here, the district court’s findings are supported by
 
 *532
 
 substantial evidence. Even assuming the mitigation verdict form was not given to the jury, the record shows that the jurors were instructed on and considered the mitigating circumstances Browning specifically requested. Moreover, jurors are not required to specify which, if any, mitigating circumstances it found.
 
 [35]
 
 Rather, the jury need only state that there are no mitigating factors sufficient to outweigh the aggravating circumstances.
 
 [36]
 

 Further, even assuming the jury did not receive the non-death-penalty verdict form, Browning fails to demonstrate prejudice in light of an instruction informing the jury that it was not compelled to impose death under any circumstances and the jury foreman’s testimony that the jury determined that death was the appropriate punishment. Accordingly, we conclude that the district court did not abuse its discretion in this regard.
 

 Instructions respecting felony-murder aggravating circumstances
 

 The jury found that Elsen’s murder was aggravated because Browning committed the murder during the course of a robbery and burglary. Browning argues that the district court erroneously instructed the jury respecting the crucial elements of the aggravators as set forth in NRS 200.033(4); therefore these aggravating circumstances must be stricken. NRS 200.033(4) provides that first-degree murder may be aggravated if the murder was committed during the commission of one of several enumerated felonies, including robbery and burglary. The statute also requires that the person charged “[kjilled or attempted to kill the person murdered” or “[kjnew or had reason to know that life would be taken or lethal force used.” Browning complains that the district court’s failure to advise the jury of these last two elements prejudiced him because he contested the State’s claim that he was solely responsible for Elsen’s murder and that he was the person who stabbed Elsen. He argues that the omission precluded the jury from satisfying the requirements of
 
 Enmund
 
 v. Florida
 
 [37]
 
 and
 
 Tison v.
 
 Arizona,
 
 [38]
 

 In
 
 Enmund,
 
 the United States Supreme Court held that the Eighth Amendment precludes the imposition of the death penalty for a defendant who aids and abets in a felony during the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend a murder to occur or lethal force be used.
 
 [39]
 
 The Supreme Court later broadened this standard in
 
 Tison,
 
 holding that “major participation in the felony committed, com
 
 *533
 
 bined with reckless indifference to human life, is sufficient to satisfy the
 
 Enmund
 
 culpability requirement.”
 
 [40]
 

 Browning failed to object to the relevant instruction. Generally, the failure to object precludes appellate review absent plain error.
 
 [41]
 
 Browning must show that the error was plain and that it affected his substantial rights.
 
 [42]
 
 We conclude that Browning has failed to do so. A determination of culpability under
 
 Enmund
 
 need not be made by the jury, and although a jury determination is preferable, it may be made on appeal.
 
 [43]
 
 Browning was charged with directly committing Elsen’s murder by stabbing him to death with a knife. He was not charged under aiding or abetting or coconspirator theories of liability nor was the jury instructed on these theories in the guilt phase of trial. The jury convicted him of first-degree murder with the use of a deadly weapon. Although in the penalty hearing Browning attempted to deflect sole responsibility for Elsen’s murder, the evidence adduced in the guilt phase, as presented to the jury in the penalty hearing, overwhelmingly showed that Browning killed Elsen. Therefore, we conclude that no prejudice affecting his substantial rights resulted from the erroneous instruction.
 

 Prosecutorial misconduct
 

 Browning argues that numerous instances of prosecutorial misconduct committed during closing argument entitle him to a new penalty hearing. Browning objected to a few of the comments he now challenges, but to most he did not. We have carefully reviewed the comments to which Browning did not object and conclude that he failed to demonstrate plain error.
 
 [44]
 

 Turning to the challenged comments preserved for our review, prejudice from prosecutorial misconduct results when “a prosecutor’s statements so infect[ ] the proceedings with unfairness as to make the results a denial of due process.’ ’
 
 [45]
 
 When reviewing prosecutorial misconduct, the challenged comments must be considered in context and “ ‘a criminal conviction is not to be lightly overturned on the basis of a prosecutor’s comments standing alone.’ ”
 
 [46]
 

 
 *534
 
 Browning first contends that he was prejudiced by the prosecutor’s reference to Browning and his actions as evil. The district court sustained counsel’s objection to the prosecutor’s use of the word “evil.” However, we have considered similar comments to be proper.
 
 [47]
 
 Reviewing the challenged comment in context, we conclude that the prosecutor merely expressed the gravity of the crime charged.
 

 Browning next asserts that the prosecutor improperly placed blame for Elsen’s murder on the criminal justice system and suggested that Browning “was trying to fool the system, and by extension, the jurors.” During opening statement, Browning requested the jury to afford him the opportunity for parole. Accordingly, the State could properly argue that allowing Browning the opportunity for parole was unreasonable in this case. As we have held, “[w]hen there is evidence ... of a defendant’s past conduct which supports a reasonable inference that even incarceration will not deter the defendant from endangering others’ lives, a prosecutor is entitled to ask the jury to draw that inference.”
 
 [48]
 
 Evidence adduced at trial elucidated Browning’s violent criminal record, that he had been placed on parole at least twice, and that he committed the instant murder while on parole.
 

 Browning next argues that the prosecutor disparaged counsel by criticizing counsel for apologizing to the jurors if he acted in any offensive way and requesting that the jurors not hold anything he did against Browning. It is improper for a prosecutor to disparage defense counsel or legitimate defense tactics.
 
 [49]
 
 To the extent that the brief challenged comments may be considered improper, we conclude that the comments did not prejudice Browning and are harmless beyond a reasonable doubt.
 
 [50]
 

 
 *535
 

 Denial of Browning’s request for investigative funds
 

 Browning argues that the district court erred by summarily denying his request for information from the State respecting death penalty data or, in the alternative, to grant the defense $25,000 for a full investigation of death penalty data. In particular, Browning requested “a list of all similarly situated defendants under the jurisdiction of the Eighth Judicial District Court who have been charged with Aggravated Murder with death penalty specifications pursuant to N.R.S. 200.033, since the inception of the Nevada Death Penalty Statute.” He further requested the dispositions in those cases. However, Browning wholly fails to explain any prejudice to his defense resulting from the absence of this information or that such information would have been admissible during the penalty hearing. Therefore, we conclude that the district court did not err in this regard.
 

 Use of leg restraints during penalty hearing
 

 Browning argues that the district court erred in ordering him to wear leg restraints throughout the penalty hearing. Prior to trial, Browning filed a motion to appear at all proceedings without restraints. Without explanation, the district court ordered Browning to wear leg restraints and a skirt to be placed around the defense table to conceal Browning’s legs. At the beginning of trial, counsel again objected to the use of leg restraints. The district court noted its “complete confidence” that Browning would not be disruptive, but that it could not ‘ ‘take the chance’ ’ considering he had been found guilty of first-degree murder.
 

 Constitutional protection from appearing at trial in restraints “is diminished during the penalty phase because the defendant is no longer entitled to a presumption of innocence.’ ’
 
 [51]
 
 A defendant may be physically restrained only during sentencing to protect an essential state interest such as maintaining public safety or the decorum of the proceedings.
 
 [52]
 
 The employment of physical restraints at the penalty stage rests within the district court’s discretion after balancing public safety concerns against any potential prejudice to the defendant.
 
 [53]
 

 
 *536
 
 Here, the district court expressed a general concern for public safety considering Browning’s conviction for first-degree murder. The district court’s brief statement, however, failed to explain any specific concern related to Browning. Although the constitutional protection from appearing in restraints is diminished during a penalty hearing, nonetheless there must be an essential state interest particular to the defendant warranting the use of restraints. However, considering that the leg restraints were not visible to the jury, we conclude that no relief is warranted in this instance.
 

 Admission of alleged improper hearsay evidence
 

 Browning argues that the district court abused its discretion by denying his motion to exclude hearsay statements from the penalty hearing in violation of
 
 Crawford v.
 
 Washington,
 
 [54]
 
 Browning points to several pieces of testimony he contends violate
 
 Crawford’s
 
 mandate that the admission of testimonial hearsay statements violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him.
 
 [55]
 

 In particular, Browning challenges the following testimony: (1) a police detective’s testimony that another police officer informed him at the crime scene of the location of several witnesses to the crime; (2) the admission of physical evidence and photographs admitted at the first trial through the testimony of a police detective; (3) a police detective’s testimony respecting the pretrial identification of defendant by several witnesses; (4) a police detective’s testimony that Vanessa Wolfe informed him that an agitated Browning was in her motel room, taking tags off of jewelry and that Browning had asked her to dispose of particular items; (5) the testimony of a California correction officer who explained Browning’s prior California felony convictions; and (6) the testimony of a Los Angeles County law enforcement officer who explained Browning’s participation in a 1982 robbery.
 

 With the exception of the last item of testimony listed, Browning failed to object to the admission of any of this testimony as impermissible hearsay, and therefore, we review for plain error.
 
 [56]
 
 However, to the extent any of the challenged testimony falls within the ambit of
 
 Crawford,
 
 we conclude that relief is not warranted under any standard of review. Browning acknowledges this court’s
 
 *537
 
 opinions in
 
 Thomas v. State,
 

 [57]
 

 Summers v. State,
 

 [58]
 

 and
 
 Johnson v. State,
 

 [59]
 

 in which this court concluded that
 
 Crawford
 
 does not apply to capital penalty hearings. We decline Browning’s invitation to revisit our holdings in those cases.
 

 Browning further contends that irrespective of this court’s conclusion respecting
 
 Crawford,
 
 all evidence admitted at a penalty hearing must exhibit some indicia of reliability. However, he fails to adequately explain why any of the challenged testimony should have been excluded as unreliable.
 

 Alleged admission of evidence in violation of Bennett
 
 v.
 
 District Court
 

 Browning argues that the district court erred by allowing evidence of his criminal history that was not introduced in his first penalty hearing, in violation of
 
 Bennett v. District Court.
 

 [60]
 

 In
 
 Bennett,
 
 we held that the decision in
 
 McConnell v. State,
 

 [61]
 

 which rendered invalid two aggravators charged in Bennett’s original prosecution, did not constitute “good cause” to allow the State to amend its notice of intent to seek the death penalty to allege additional aggravating circumstances in Bennett’s second penalty hearing.
 
 [62]
 

 Here, counsel filed a pretrial motion to preclude the State from presenting evidence of prior bad acts not introduced in the first penalty hearing. After a hearing on the matter, the district court ruled that the State was prohibited from introducing evidence of Browning’s criminal history that was not introduced at the original trial, concluding that it would be unfair to Browning to allow the State to bring in additional evidence of which it was aware at the time of the first penalty hearing. Browning argues that the district court erroneously allowed evidence of his criminal history in contravention of its ruling.
 

 Browning’s reliance on
 
 Bennett
 
 is not squarely on point as that case addressed whether the State could allege a new aggravating circumstance on retrial that had not been pursued in the original trial. Here, the State did not seek to prove additional aggravating circumstances at Browning’s second penalty hearing. Browning
 
 *538
 
 contends that although
 
 Bennett
 
 is not on point, the underlying reasoning is relevant to his case,
 
 i.e.,
 
 the State should be precluded from “introducing a plethora of new evidence at a second penalty trial which was readily available to the State at the first trial.” However, Browning overstates the quantity of “new evidence” the State introduced at the second penalty hearing. With one exception,
 
 [63]
 
 all of the prior bad acts Browning challenges in this appeal were introduced in the original trial. It was the manner in which the State presented evidence of these bad acts that differed in the second penalty hearing. That is, additional witnesses testified to some of the prior bad acts in the second penalty hearing.
 

 Even assuming that we were inclined to extend the reasoning of
 
 Bennett
 
 to Browning’s case, his argument fails. In
 
 Bennett,
 
 this court stated that “[t]he purpose of SCR 250(4)(d) is to protect a capital defendant’s due process rights to fair and adequate notice of aggravating circumstances, safeguard against any abuse of the system, and insert some predictability and timeliness into the process.”
 
 [64]
 
 This court was also persuaded in
 
 Bennett
 
 by the fact that the evidence upon which the State based the newly alleged aggravators existed at the time of Bennett’s original trial and the State rejected the new aggravating circumstances at that time.
 
 [65]
 
 Here, however, the challenged testimony did not reveal any fact or circumstance respecting Browning’s prior felony convictions or other bad acts that was not presented at the original penalty hearing.
 
 [66]
 

 Further, SCR 250(4)(f) requires the State to file, no later than 15 days before trial, a notice of evidence in aggravation “summariz[ing] the evidence which the state intends to introduce at the penalty phase of trial . . . and identifying] the witnesses, documents, or other means by which the evidence will be introduced.” Here, the State complied with that requirement by filing a notice of evidence in aggravation on December 29, 2005, and an amended notice of evidence in aggravation on March 16, 2006. Browning’s second penalty hearing commenced on April 10, 2006. Browning does not claim that he was surprised by any of the challenged evidence or that the notices were inadequate.
 

 
 *539
 
 Based on the foregoing discussion, we conclude that no relief is warranted on this claim.
 

 Cumulative error
 

 Browning argues that the cumulative effect of the errors committed during the penalty hearing warrant reversal of his death sentence. “The cumulative effect of errors may violate a defendant’s constitutional right to a fair trial even though errors are harmless individually.”
 
 [67]
 
 We conclude that any errors committed, considered together, do not warrant relief.
 

 Mandatory appellate review of death sentence
 

 NRS 177.055(2) requires us to review every death sentence and consider whether (1) the evidence supports the finding of the aggravating circumstances; (2) the death sentence was imposed under the influence of passion, prejudice, or any arbitrary factor; and (3) the death sentence is excessive, considering both the crime and the defendant.
 

 Respecting the first question, sufficient evidence supports the four aggravating circumstances found. The jury considered evidence from Browning’s original trial that he entered Elsen’s jewelry store where he removed chains, rings, and watches, leaving a mortally wounded Elsen to die from the repeated stab wounds Browning inflicted on him. This evidence supports a finding that Browning killed Elsen during the commission of a robbery and burglary. Next, the jury heard evidence and testimony that Browning had been convicted of three robberies, all of which occurred in California and involved the use or threat of violence as contemplated by NRS 200.033(2)(b). Finally, the jury heard that Browning was on parole for a California felony conviction on November 8, 1985, the date he murdered Elsen, thereby supporting a finding that Browning was under a sentence of imprisonment when he murdered Elsen.
 
 [68]
 

 Turning to the second question, although Elsen’s murder was brutal, nothing in the record suggests that the jury reached its verdict under the influence of passion, prejudice, or any arbitrary factor. Despite Browning’s claims that his penalty hearing was unfair
 
 *540
 
 on the grounds outlined above, any error committed did not unduly prejudice him or serve to inflame the jury
 

 Finally, we must consider whether the death sentence is excessive. The evidence shows that Browning brutally stabbed Elsen six times and absconded with jewelry from Elsen’s store. Browning’s mitigation evidence centered on his family’s love for him and his contribution to the lives of his siblings, mother, and extended family. Although this evidence was credible, it carried little weight considering the viciousness of the murder and Browning’s penchant for committing violent crimes. Therefore, we conclude that the death sentence in this case is not excessive.
 

 CONCLUSION
 

 For the reasons discussed above, we conclude that any error committed during the penalty hearing was not so egregious as to warrant relief. Therefore, we affirm the sentence of death.
 

 [2]
 

 Browning
 
 v.
 
 State (Browning I),
 
 104 Nev. 269, 757 P.2d 351 (1988).
 

 [3]
 

 Browning
 
 v.
 
 State (Browning II),
 
 120 Nev. 347, 91 P.3d 39 (2004).
 

 [4]
 

 The murder charge alleged that Browning “with malice aforethought, willfully and feloniously” killed Elsen. The State did not pursue the murder charge under a felony-murder theory.
 

 [5]
 

 The escape offense stemmed from Browning’s flight from a detention facility after his arrest for Elsen’s murder.
 

 [6]
 

 Browning
 
 1, 104 Nev. 269, 757 P.2d 351.
 

 [7]
 

 NRS 200.033(4).
 

 [8]
 

 Id.
 

 [9]
 

 NRS 200.033(2)(b).
 

 [10]
 

 NRS 200.033(1).
 

 [11]
 

 Browning was sentenced to serve a term of 10 years in prison for burglary, two consecutive 15-year terms for robbery with the use of a deadly weapon, and a 4-year term for escape. The district court ordered all sentences to run consecutively.
 

 [12]
 

 Browning
 
 v.
 
 State (Browning II),
 
 120 Nev. 347, 355, 91 P.3d 39, 45 (2004).
 

 [13]
 

 The prosecutor testified that Randall was never charged with theft, receiving stolen property, or perjury stemming from his retention of several pieces of jewelry stolen from Elsen’s store. However, nothing in the record on appeal suggests that the State’s failure to prosecute Randall in this regard was the result of any deal to secure his testimony at Browning’s original trial.
 

 [14]
 

 373 U.S. 83 (1963).
 

 [15]
 

 Browning II,
 
 120 Nev. at 369, 91 P.3d at 54-55.
 

 [16]
 

 McKenna v. State,
 
 114 Nev. 1044, 1052, 968 P.2d 739, 744 (1998);
 
 Jones
 
 v.
 
 State,
 
 101 Nev. 573, 578, 707 P.2d 1128, 1132 (1985).
 

 [17]
 

 Jones,
 
 101 Nev. at 578, 707 P.2d at 1132.
 

 [18]
 

 546 U.S. 517, 523 (2006).
 

 [19]
 

 Id.
 
 at 523.
 

 [20]
 

 108 Nev. 127, 141, 825 P.2d 600, 609 (1992);
 
 see Franklin
 
 v.
 
 Lynaugh,
 
 487 U.S. 164, 174 (1988) (reasoning that lingering doubts over a defendant’s guilt do not constitute an aspect of the defendant’s character, record, or a circumstance of the offense);
 
 Middleton v. State,
 
 114 Nev. 1089, 1114, 968 P.2d 296, 313 (1998) (stating that “a capital defendant has no constitutional right to a jury instruction making residual doubt a mitigating circumstance”).
 

 [21]
 

 114 Nev. at 1059, 968 P.2d at 749.
 

 [22]
 

 Id.
 

 [23]
 

 NRS 200.033(4).
 

 [24]
 

 Browning
 
 v.
 
 State (Browning II),
 
 120 Nev. 347, 372, 91 P.3d 39, 56 (2004).
 

 [25]
 

 Id.
 

 [26]
 

 Id.
 

 [27]
 

 Id.
 

 [28]
 

 Leonard
 
 v.
 
 State,
 
 117 Nev. 53, 67, 17 P.3d 397, 406 (2001);
 
 see Wainwright
 
 v.
 
 Witt, 469
 
 U.S. 412, 424-26 (1985).
 

 [29]
 

 86 Nev. 80, 87, 465 P.2d 133, 138 (1970);
 
 see Anderson v. State,
 
 86 Nev. 829, 835-36, 477 P.2d 595, 599-600 (1970) (applying
 
 Bean).
 

 [30]
 

 117 Nev. at 66, 17 P.3d at 406. We reviewed for plain error Leonard’s claim that the district erred in removing the prospective juror for cause.
 

 [31]
 

 113 Nev. 853, 867, 944 P.2d 762, 771 (1997).
 

 [32]
 

 To the extent that Browning argues that the juror was asked to prejudge the merits of the case, we conclude that he has failed to demonstrate reversible error as the issue of his guilt was not a matter before the jury. Moreover, the nature of the case was not explained in an inflammatory manner.
 

 [33]
 

 See Weber v. State,
 
 121 Nev. 554, 580, 119 P.3d 107, 125 (2005).
 

 [34]
 

 See State
 
 v.
 
 Rincon,
 
 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006).
 

 [35]
 

 Gallego v. State,
 
 117 Nev. 348, 366, 23 P.3d 227, 239 (2001);
 
 Rogers v. State,
 
 101 Nev. 457, 469, 705 P.2d 664, 672 (1985).
 

 [36]
 

 See
 
 NRS 175.554(3).
 

 [37]
 

 458 U.S. 782 (1982).
 

 [38]
 

 481 U.S. 137 (1987).
 

 [39]
 

 458 U.S. at 797.
 

 [40]
 

 481 U.S. at 158.
 

 [41]
 

 Green v.
 
 State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).
 

 [42]
 

 Id.
 

 [43]
 

 Evans
 
 v.
 
 State, 112
 
 Nev. 1172, 1197-98, 926 P.2d 265, 281 (1996);
 
 Guy
 
 v.
 
 State,
 
 108 Nev. 770, 784, 839 P.2d 578, 587 (1992).
 

 [44]
 

 See Anderson
 
 v.
 
 State. 121
 
 Nev. 511, 516, 118 P.3d 184, 187 (2005);
 
 Green,
 
 119 Nev. at 545, 80 P.3d at 95.
 

 [45]
 

 Thomas v. State,
 
 120 Nev. 37, 47, 83 P.3d 818, 825 (2004).
 

 [46]
 

 Hernandez
 
 v.
 
 State,
 
 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002) (quoting
 
 United States
 
 v.
 
 Young,
 
 470 U.S. 1, 11 (1985)).
 

 [47]
 

 Greene v. State,
 
 113 Nev. 157, 170, 931 P.2d 54, 62 (1997) (concluding that the prosecutor’s comment during opening statement that the defendant committed “the ultimate evil,” not once but twice, was not improper because the State later proved that Greene had committed the murders),
 
 overruled on other grounds by Byford v. State,
 
 116 Nev. 215, 994 P.2d 700 (2000);
 
 see also Evans v. State,
 
 117 Nev. 609, 632, 28 P.3d 498, 514 (2001) (concluding that the prosecutor’s reference to the defendant as an “evil magnet” was not improperly inflammatory or a disparagement of defense tactics).
 

 [48]
 

 Haberstroh v. State,
 
 105 Nev. 739, 741, 782 P.2d 1343, 1344 (1989).
 

 [49]
 

 Butler
 
 v.
 
 State,
 
 120 Nev 879, 898, 102 P.3d 71, 84 (2004).
 

 [50]
 

 Witter
 
 v.
 
 State,
 
 112 Nev. 908, 923, 921 P.2d 886, 897 (1996),
 
 receded from on other grounds by Byford
 
 v.
 
 State,
 
 116 Nev. 215, 994 P.2d 700 (2000).
 

 [51]
 

 Elvik
 
 v.
 
 State,
 
 114 Nev. 883, 888, 965 P.2d 281, 284 (1998);
 
 see
 
 NRS 178.394.
 

 [52]
 

 Elvik,
 
 114 Nev. at 888, 965 P.2d at 284 (quoting
 
 Duckett
 
 v.
 
 Godinez,
 
 67 F.3d 734, 747 (9th Cir. 1995)).
 

 [53]
 

 Canape v. State,
 
 109 Nev. 864, 872, 859 P.2d 1023, 1028 (1993).
 

 [54]
 

 541 U.S. 36 (2004).
 

 [55]
 

 Id.
 
 at 68-69.
 

 [56]
 

 Flores v. State,
 
 121 Nev. 706, 722, 120 P.3d 1170, 1180-81 (2005).
 

 [57]
 

 122 Nev. 1361, 148 P.3d 727 (2006).
 

 [58]
 

 122 Nev. 1326, 148 P.3d 778 (2006).
 

 [59]
 

 122 Nev. 1344, 148 P.3d 767 (2006).
 

 [60]
 

 121 Nev 802, 121 P.3d 605 (2005).
 

 [61]
 

 120 Nev. 1043, 102 P.3d 606 (2004).
 

 [62]
 

 Bennett,
 
 121 Nev at 811, 121 P.3d at 610-11.
 

 [63]
 

 During his testimony, a Los Angeles Police Department detective referenced Browning’s 1979 arrest for an unspecified offense and an October 1985 arrest for grand theft auto. There was no indication in the transcript of the original penalty hearing that this evidence had been introduced. However, even assuming that the introduction of these events in the second penalty hearing was error, Browning was not prejudiced. There was no suggestion in the record before us that these offenses were violent, and their revelation pales in comparison to Browning’s prior felony convictions for violent crimes.
 

 [64]
 

 Bennett,
 
 121 Nev. at 810, 121 P.3d at 610.
 

 [65]
 

 Id. at 810-11, 121 P.3d at 611.
 

 [66]
 

 Again, we
 
 note the one
 
 exception explained in note 63.
 

 [67]
 

 Hernandez
 
 v.
 
 State,
 
 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002).
 

 [68]
 

 See McNelton v. State,
 
 111 Nev. 900, 907-08, 900 P.2d 934, 938 (1995) (upholding the under-a-sentence-of-imprisonment aggravating circumstance “when a defendant commits the murder while still serving his sentence for another crime even though he has been released from physical incarceration”).