# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID STEPHEN MIDDLETON,
Appellant,
vs.
E.K. MCDANIEL, WARDEN; AND
ADAM PAUL LAXALT, ATTORNEY
GENERAL FOR THE STATE OF
NEVADA,
Respondents.

No. 62869

FILED

DEC 21 2016

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from an order of the district court dismissing David Stephen Middleton's postconviction petition for a writ of habeas corpus. Second Judicial District Court, Washoe County; Steven P. Elliott, Judge.

Middleton kidnapped and murdered K. Powell and T. Davila. He also stole several items from Powell's residence and used her credit card to purchase stereo equipment. Middleton imprisoned the victims, as well as stored their property and items he purchased with Powell's credit card, in a storage unit he rented with his girlfriend, E. Haley. Middleton was convicted of two counts of first-degree murder, two counts of first-degree kidnapping, one count of grand larceny, one count of fraudulent use of a credit card, and two counts of felon in possession of a firearm. The jury sentenced him to death for each murder. This court affirmed the judgment of conviction on appeal. *Middleton v. State*, 114 Nev. 1089, 968 P.2d 296 (1998). Middleton unsuccessfully sought relief in a prior petition for a writ of habeas corpus. *See Middleton v. State*, Docket No. 50457 (Order of Affirmance, June 16, 2009). Middleton filed the instant petition

16-39636

in the district court on September 2, 2010. The district court dismissed the petition. This appeal followed.

*Procedural bars*

Middleton's postconviction petition for a writ of habeas corpus is subject to several procedural bars. The petition was untimely as it was filed more than one year after this court issued its remittitur on direct appeal. NRS 34.726(1). To the extent that the petition raised the same claims that were raised in prior petitions, it was successive. NRS 34.810(2). To the extent that the petition raised new claims that could have been litigated in a prior proceeding, it constituted an abuse of the writ. NRS 34.810(1)(b)(2). Petitions that are untimely, successive, or constitute an abuse of the writ are subject to dismissal absent a showing of good cause and prejudice. NRS 34.726(1); NRS 34.810(1)(b), (3). As cause to overcome the procedural default rules, Middleton contends that prior postconviction counsel provided ineffective assistance. *See Crump v. Warden*, 113 Nev. 293, 304-05, 934 P.2d 247, 254 (1997) (recognizing that ineffective assistance of postconviction counsel may establish cause and prejudice to file second postconviction petition where counsel was appointed pursuant to a statutory mandate).

*Ineffective assistance of postconviction counsel*

Middleton argues that the district court erred in concluding that his claims of ineffective assistance of postconviction counsel were procedurally barred.[1] We conclude that the district court erred in

---

[1]To the extent Middleton's argument that the ineffective assistance of prior counsel necessitates the tolling of the time bar in NRS 34.726, we

*continued on next page...*

 

determining that the claims of ineffective assistance of postconviction counsel were not timely raised. *See Rippo v. State,* 132 Nev., Adv. Op. 11, 368 P.3d 729, 739-40 (2016). These claims were not available until this court affirmed the district court order denying the first postconviction petition. Further, the petition was filed within one year of the issuance of remittitur from this court's decision affirming the denial of Middleton's first postconviction petition, which is a reasonable time after the claim became available.

Although Middleton demonstrated good cause, he must also show prejudice by demonstrating that his postconviction counsel claims were meritorious. To this end, he must demonstrate both deficient performance (that counsel's performance fell below an objective standard of reasonableness) and that counsel's performance prejudiced him in the prior postconviction proceeding (that the outcome of that proceeding would have been different but for counsel's deficient performance). *Rippo,* 132 Nev., Adv. Op. 11, 368 P.3d at 739-42; *see also Crump,* 113 Nev. at 304 & n.6, 934 P.2d at 254 & n.6 (indicating that test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), would be used to evaluate postconviction counsel's assistance). Middleton must demonstrate that his postconviction counsel failed to raise claims of ineffective assistance of trial and appellate counsel in his prior petition, and that had those claims been raised, he would have been granted relief. *See Rippo,* 132 Nev., Adv. Op. 11, at 20-

*...continued*
conclude that his argument lacks merit. *See Brown v. McDaniel,* 130 Nev., Adv. Op. 60, 331 P.3d 867, 874 (2014).

22, 368 P.3d at 739-42 (adopting *Strickland* analysis). Therefore, in evaluating whether postconviction counsel were ineffective, we must consider the merits of the omitted claims of ineffective assistance of trial or appellate counsel. For the reasons discussed below, we conclude that Middleton fails to demonstrate the omitted claims have merit, and thus he fails to demonstrate ineffective assistance of postconviction counsel.

*Failure to challenge venue*

Middleton contends that trial and appellate counsel were ineffective for failing to challenge venue. We conclude that Middleton fails to demonstrate deficiency or prejudice as there was no basis for a change of venue. The court excused nine veniremembers who acknowledged that news reports they had seen would make it difficult for them to sit as jurors. Seven of the veniremembers summoned to replace those excused indicated that they had seen media reports, but none of them formed an opinion based on those reports. Therefore, any effort to change the venue would not have met with success. *See Sonner v. State*, 112 Nev. 1328, 1336, 930 P.2d 707, 712-13 (1996) (recognizing that venue may be appropriate even where pretrial publicity has been pervasive so long as the jurors could be fair and impartial in their deliberations), *modified on rehearing on other grounds by* 114 Nev. 321, 955 P.2d 673 (1998); *see also Ford v. State*, 102 Nev. 126, 129, 717 P.2d 27, 29 (1986).

*Jury selection errors*

Middleton argues that trial and appellate counsel were ineffective for failing to ensure the selection of an impartial jury. We conclude that, as Middleton fails to show that any of the seated jurors were not impartial, *see Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793,

799 (1996) (stating that "[i]f the impaneled jury is impartial, the defendant cannot prove prejudice" resulting from district court's limitation of voir dire), he fails to demonstrate that he was prejudiced by trial counsel's voir dire performance or appellate counsel's failure to challenge any jurors on appeal. Middleton identifies only one juror who he claims was disposed to render the death penalty.[2] However, the record does not demonstrate that she was so disposed to impose a death sentence to render her biased against him. Although her questionnaire answers were contradictory, during voir dire she acknowledged that the death penalty was a serious penalty and her inconsistent answers resulted from the fact that she never really thought about the issue. Further, she said she could consider all available penalties. While she worked at the same school district as Powell, she indicated that it would not affect her decisions in the case.

*Failure to challenge guilt phase evidence*

Middleton contends that trial counsel were ineffective for failing to challenge testimony that Davila owned the pink blanket seized from Middleton's storage unit. Specifically, he asserts that trial counsel did not challenge the State's failure to turn over evidence related to Davila's sister, D. Valverde's learning disability and memory problems,

---

[2]Middleton claims that counsel failed to adequately voir dire or remove other jurors, but his brief does not identify how they were biased against him.

which would have undermined her identification of the blanket.[3] He also contends that the State was in possession of a video that showed that Middleton had owned a similar blanket.[4]

We conclude that the district court did not err in denying this claim. Middleton did not demonstrate that prior counsel could have raised a viable *Brady*[5] claim concerning Valverde's purported learning disability. The State was not aware of Valverde's learning disability because it had not been discovered until she sought counseling after trial. Her inability to remember some of the events of years earlier did not put the State on notice that she had a cognitive disability. Therefore, Middleton's counsel could not demonstrate that impeachment evidence was withheld. *See Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000).

Even if Middleton could have introduced the aforementioned evidence, he did not demonstrate a reasonable probability that the result of the trial would have been different. *See id.* (providing that petitioner must demonstrate that withheld evidence was material under *Brady* to

---

[3]Middleton contends that these issues with Valverde were exacerbated by the use of biased and unqualified interpreters. However, as Middleton failed to demonstrate that the State was in possession of exculpatory evidence, the alleged error could not have been compounded by the quality of the interpreters.

[4]Middleton contends that this court must evaluate the cumulative effect of prejudice from the failure to litigate this issue in conjunction with other claims of misconduct. As discussed below, Middleton failed to demonstrate any prejudice from these claims that could have a cumulative effect.

[5]*Brady v. Maryland*, 373 U.S. 83 (1963).

establish actual prejudice in a postconviction petition). Other witnesses identified the blanket and other property found in the storage unit belonging to Davila. Moreover, Davila and Haley were seen together several times before Davila's disappearance. Middleton was seen outside of Davila's apartment on the morning she disappeared and he moved into a larger storage unit later that day. Hair found in the unit was consistent with Davila; in particular, DNA recovered from hair found in the unit, other than hair recovered on the pink blanket, was consistent with Davila's DNA. Witnesses also identified Davila's clothing, which was recovered from Middleton's unit. Davila's remains were accompanied by rope, which was consistent with rope found in the storage unit and used to bind Powell, and plastic similar to that used to cover Powell.

### Failure to remedy misconduct

Middleton asserts that appellate counsel were ineffective for failing to assert that the trial court inadequately remedied the State's violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Although the district court suppressed his statements, Middleton argues, based on *Rochin v. California*, 342 U.S. 165 (1952), that appellate counsel should have argued that the prosecutor seeking a waiver of his rights after he invoked his right to counsel required: (1) suppression of all his statements based on the violation of *Minnick v. Mississippi*, 498 U.S. 146 (1990), (2) suppression of all evidence seized from the storage unit as it was derived from his statements, (3) striking of the notice of intent to seek death, (4) dismissal of charges, and (5) disqualification of the public defender's office from his case. We conclude that the initiation of an interrogation outside the presence of requested counsel did not involve the application of "force

so brutal and so offensive to human dignity" so as to completely deny Middleton due process and therefore *Rochin* is inapposite. Middleton fails to demonstrate prejudice because the State's violations of his due process rights were adequately addressed by the utilization of the exclusionary rule.

*Failure to challenge the use of a stun belt*

Middleton contends that trial and appellate counsel failed to challenge the use of a stun belt. We conclude that Middleton did not demonstrate that trial counsel were deficient in failing to demand a hearing because *Hymon v. State*, 121 Nev. 200, 111 P.3d 1092 (2005), and the decisions upon which it relies concerning the court's scrutiny of the use of stun belts, *see Gonzalez v. Pliler*, 341 F.3d 897 (9th Cir. 2003); *United States v. Durham*, 287 F.3d 1297 (11th Cir. 2002); *People v. Mar*, 52 P.3d 95 (Cal. 2002), had not been decided until after Middleton's trial, *see Nika v. State*, 124 Nev. 1272, 1289, 198 P.3d 839, 851 (2008) ("[C]ounsel's failure to anticipate a change in the law does not constitute ineffective assistance of counsel even where the theory upon which the court's later decision is based is available, although the court had not yet decided the issue." (internal quotation marks omitted)). Moreover, as he does not identify what information he could not communicate to counsel, Middleton fails to demonstrate that he was prejudiced.[6] *See Hymon*, 121 Nev. at 208, 111 P.3d at 1098 ("The fear of receiving a painful and humiliating shock

---

[6]Middleton did not assert that he had been prevented from communicating with counsel, only that he was in possession of exculpatory evidence: knowledge that the blanket belonged to him.

 

for any gesture that could be perceived as threatening likely chills a defendant's inclination to make any movements during trial – including those movements necessary for effective communication with counsel.'" (quoting *Durham*, 287 F.3d at 1305)).

### *Conflict of interest*[7]

Middleton argues that a number of factors contributed to trial counsel's failure to litigate the State's discovery and prepare for trial. He argues that the conflict of interest that the public defender's office labored under during the initial stages of his case, in which the office represented both he and Haley, effectively denied him the right to counsel.[8] We conclude that Middleton fails to demonstrate prejudice for the reasons discussed below.[9]

---

[7]Although Middleton's claims do not appear to present a cognizable conflict of interest claim, as he has raised the underlying claims of ineffective assistance of counsel in the context of a conflict of interest claim, we have addressed them as such.

[8]Middleton claims that the State's insertion of itself into whether Middleton was appointed counsel on appeal prevented appellate counsel, the public defender, from arguing trial counsel's ineffectiveness in the pretrial proceedings. However, claims of ineffective assistance of counsel could not have been raised on direct appeal. *See Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 507 (2001).

[9]Middleton also asserts that the manner in which the public defender's office handled this conflict of interest effectively violated his right to a speedy trial and appellate counsel were ineffective for failing to argue this issue on appeal. As he fails to demonstrate prejudice, for the reasons discussed below, he fails to demonstrate that appellate counsel could have argued a successful speedy trial claim. *See Windham v. State,*
*continued on next page...*

 

First, Middleton argues that appellate counsel failed to assert that he was prejudiced because he was unable to properly litigate the admissibility of the State's voluminous evidence or to utilize exculpatory information obtained by the public defender through its representation of Haley. We conclude that Middleton fails to demonstrate that he was prejudiced. Middleton does not identify what evidence he was prevented from obtaining from Haley or what evidence he was unable to adequately litigate at trial. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (requiring specific factual allegations to warrant further inquiry of claims in a postconviction petition). Moreover, he would not have been entitled to information that the public defender learned during the course of its representation of Haley had he been represented by the public defender or any other attorney. *See* NRS 49.095 (providing that the client has privilege to refuse to disclose confidential communications between the client and his or her attorney).

Second, Middleton contends that trial counsel were forced to spend most of their time reviewing what the public defender's office had done, resulting in the State failing to disclose evidence or disclose it in a timely manner. This evidence includes a statement from Powell's coworker, S. Mizzen, in which he acknowledged that he had fantasized about her; an expert's report on how long it would take a person to suffocate in the refrigerator; a statement from Powell's ex-husband about

---

*...continued*
118 Nev. 226, 232, 43 P.3d 993, 997-98 (2002) (considering prejudice resulting from the delay of a purported speedy trial violation).

Supreme Court
OF
Nevada

(O) 1947A

10

their intimate relations; and a statement from the prosecutor that he believed that Haley was as culpable as Middleton. We conclude that Middleton failed to demonstrate that he was prejudiced by trial counsel's failure to develop this evidence because the admission of any of the aforementioned evidence would not have affected the outcome of trial. *See State v. Bennett*, 119 Nev. 589, 600, 81 P.3d 1, 8 (2003) (providing that evidence is material "when a reasonable probability exists that the result [of trial] would have been different had it been disclosed"). The evidence introduced at trial demonstrated that Powell was held in a modified refrigerator in Middleton's storage unit which contained equipment for binding people. Powell's DNA and belongings were found in the unit. The unit also contained property that Middleton had purchased with Powell's credit card. Powell's body was found wrapped in garbage bags and bound with rope consistent with similar materials found in the unit. Middleton's DNA was recovered from Powell's body. With this considerable physical evidence pointing to Middleton's responsibility for Powell's death, he fails to demonstrate that any of the evidence would have undermined the conclusion that Powell was murdered and that Middleton was responsible for her murder.[10]

Third, Middleton argues that trial counsel were ineffective for failing to object to hair fiber evidence associated with the blanket based on

---

[10]Middleton concedes that the State disclosed Mizzen's statement and the forensic report; therefore, he failed to demonstrate that counsel's performance was deficient for failing to claim that the State violated *Brady*. *See Mazzan*, 116 Nev. at 66, 993 P.2d at 36 (providing that State violates *Brady* when it withholds material, exculpatory evidence).

an insufficient chain of custody. We conclude that Middleton fails to demonstrate that the chain of custody at trial was so defective as to render the evidence inadmissible. A suitable chain of custody was established by testimony from the analyst who collected the blanket and the analyst who analyzed the blanket. While another analyst may have conducted a cursory analysis of one of the blankets, his failure to testify to the collection of the hair did not render it inadmissible. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) (recognizing gaps in the chain of custody usually go to the evidence's weight and not its admissibility); *Hughes v. State*, 116 Nev. 975, 981, 12 P.3d 948, 952 (2000) (recognizing that where it is reasonably certain that no substitution or tampering occurs, any doubt goes to the weight of the evidence). Moreover, Middleton's assertion that Valverde had an opportunity to tamper with the evidence is repelled by the record as an officer accompanied her when she viewed the evidence. Even assuming that counsel could have excluded this evidence, Middleton fails to demonstrate that it would result in a reasonable possibility of a different outcome of trial. Davila's DNA was recovered from hair on another blanket and a roll of duct tape in the storage unit.

Fourth, Middleton argues that trial counsel were ineffective for failing to challenge Lucille Pooler's identification of Middleton outside Davila's apartment based on the failure to disclose the photographic lineup. Given the aforementioned evidence demonstrating Middleton's responsibility for Davila's death, Middleton fails to demonstrate that the outcome of the trial would have been different had counsel managed to successfully exclude Pooler's identification.

Fifth, Middleton argues that trial counsel were ineffective for failing to adequately investigate and rebut the evidence concerning the victims' causes of death. We conclude that Middleton fails to demonstrate a reasonable probability that the result of the trial would have been different had counsel managed to produce more doubt in the medical examiner's conclusions. Given that the State's expert conceded that a cause of death could not be conclusively determined based on the condition of the remains, evidence or argument impugning it would have little resonance. Moreover, the abduction of the victims, the confinement in the storage unit, and the disposal of the bodies firmly proved that their deaths were the result of foul play.

Sixth, Middleton contends that trial counsel were ineffective for failing to present evidence of a pre-existing relationship between Powell and Middleton and Powell's propensity for sexual experimentation. We conclude that Middleton fails to demonstrate prejudice. As discussed above, considerable evidence was presented which indicated that Powell was kidnapped, abused, and later murdered. Moreover, given that Middleton and Haley essentially courted Davila before her abduction and murder, there is not a reasonable probability that the jury would have concluded that Powell consented to sexual conduct or her confinement had Middleton shown that they also had a prior relationship.

Seventh, Middleton argues that trial counsel were ineffective for failing to present expert testimony rebutting the State's evidence that a live person could fit inside Middleton's refrigerator and identification evidence in the form of an opinion that Middleton's teeth matched the bite mark on Powell's breast. We conclude that, given the significant forensic

evidence that Middleton abused Powell and held her in the refrigerator, Middleton fails to demonstrate that postconviction counsel could have demonstrated extraordinary circumstances sufficient to challenge trial counsel's strategic decision not to introduce expert testimony on these subjects, *see Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) ("A strategy decision, such as who should be called as a witness, is a tactical decision that is virtually unchallengeable absent extraordinary circumstances." (quotation marks omitted)), or that he was prejudiced by the failure to litigate this claim. The State introduced testimony and a photograph showing a crime scene analyst fitting in the refrigerator, which had been modified for purposes clearly distinct from preserving food. Fibers and metal shavings found on Powell's body indicated that Powell had been in the refrigerator. In addition to a bite mark matching Middleton on Powell's breast, Middleton's semen was found on Powell's thigh, which conclusively demonstrated that he had been in contact with Powell's body.

*Failure to investigate mitigating evidence*

Middleton contends that trial counsel were ineffective for failing to present mitigating evidence. Middleton asserts that his upbringing was "plagued by poverty, parental abandonment, inappropriate sexual boundaries between mother and son, racism, and urban violence, leading to experimentation and later addiction to alcohol and drugs." He claims that an adequate investigation would have also revealed bipolar, cognitive, and substance abuse disorders.

We conclude that Middleton fails to demonstrate that trial counsels' performance was deficient for not presenting psychological

evidence in mitigation. Trial counsel concluded, based on a review of three pretrial psychological evaluations and his interaction with Middleton, that there was no basis for a psychiatric defense or psychiatric evidence in mitigation. This was a reasonable decision based on compelling evidence and counsels' own observations and Middleton has not demonstrated the existence of extraordinary circumstances sufficient to undermine it. *See id.* Similarly, Middleton fails to demonstrate that trial counsel were deficient for failing to present evidence of his relationship with his mother because the record does not indicate that trial counsel knew of these allegations. Counsel conducted a thorough investigation and settled on a mitigation theory to present the best possible character evidence about Middleton and essentially show that the crimes were an isolated deviation from that good character. *See McNelton v. State,* 115 Nev. 396, 410, 990 P.2d 1263, 1273 (1999) (noting that decision concerning what mitigation evidence to present is a tactical one). Even assuming that counsel knew of the allegations, *see Cullen v. Pinholster,* 563 U.S. 170, 196 (2011) (explaining that appellate court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [an appellant's] counsel may have had for proceeding as they did" (internal quotation marks, alterations, and citations omitted)), Middleton fails to demonstrate that it was unreasonable to omit this evidence as it did not fit within the mitigation theme presented by counsel and could have cast him in an unfavorable light, *see id.* at 201 (observing that evidence of defendant's family's substance abuse problems, mental illness, and criminal history was "by no means clearly mitigating, as the jury might have concluded that [defendant] was simply beyond

rehabilitation"); *see also Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 733 (2015) (recognizing that "mitigation evidence can be a double-edged sword that may indicate diminished culpability but at the same time may indicate an increased risk of future dangerousness").

Middleton further fails to demonstrate a reasonable probability that the result of the penalty hearing would have differed had trial counsel presented the purported evidence. The aggravating circumstances were compelling. They showed that Middleton abducted and held two women captive in a storage unit. The evidence concerning Powell showed that he abused her and eventually locked her in a modified refrigerator where she suffocated. Middleton had also kidnapped and abused a 16-year-old girl before the instant crimes.

The new evidence is not so compelling as to outweigh the aggravating circumstances for two reasons. First, the new evidence is not consistent. Some of the new evidence purported to show that Middleton's mother isolated him and had inadequate boundaries with him. Psychological assessments opined that he suffered from several severe psychological problems throughout his life. However, despite these maladies and abuse, Middleton finished high school, attended college, completed the police academy, and became employed as a police officer. Some people even described him as "happy-go-lucky." Second, to the extent that the purported mitigation evidence is consistent, it is not so powerful as to outweigh the substantial evidence in aggravation. Acknowledging that mitigation evidence need not excuse or justify the crime, *Hollaway v. State*, 116 Nev. 732, 743, 6 P.3d 987, 995 (2000), Middleton's evidence of his psychological conditions and drug abuse are

less compelling by the fact that the crimes do not appear to be the product of a rash act based on those conditions. Instead, Middleton rented a storage unit under a fictitious name, modified a refrigerator to fit a person, abducted two women that he held in that storage unit, abused at least one of them, and eventually killed them.

*Failure to object to victim impact evidence*

Middleton argues that trial counsel were ineffective for failing to object to inflammatory victim impact evidence. We disagree. Most of the testimony by these witnesses was permissible. Although the testimony in which witnesses described irrelevant facts or vaguely speculated about possible sentences was objectionable, *see Kaczmarek v. State*, 120 Nev. 314, 338, 91 P.3d 16, 33 (2004) (recognizing prohibition against evidence of victim's family members' opinions about appropriate sentences for defendant), it was not prejudicial.[11] The statements were made during the testimony of three witnesses that amounted to a handful of transcript pages in a trial that lasted several weeks. Considering the brevity of the challenged testimony as compared to the entirety of the trial, the nature of the crimes, and the compelling evidence supporting the aggravating circumstances, Middleton fails to demonstrate that any error affected the outcome of the penalty hearing. *See Newman v. State*, 129 Nev. 222, 236, 298 P.3d 1171, 1181 (2013) (providing erroneous admission

---

[11]The United States Supreme Court recently concluded that the admission of family members' opinions as to sentencing violates the Eighth Amendment. *Bosse v. Oklahoma*, ___ U.S. ___, 2016 WL 5888333 (October 11, 2016).



(O) 1947A

of evidence harmless unless it had substantial and injurious effect on verdict).

*Failure to challenge prosecutorial misconduct*

Middleton contends that trial and appellate counsel were ineffective for failing to challenge prosecutorial misconduct. Under the *Strickland* test, Middleton has the burden of establishing that trial and appellate counsel were ineffective for failing to challenge the prosecutor's allegedly improper comments. To show prejudice based on counsel's failure to object, Middleton must demonstrate that it is reasonably probable that, but for trial and appellate counsel's error, the result of trial or direct appeal would have been different. *Strickland*, 466 U.S. at 694.

First, Middleton argues that trial and appellate counsel were ineffective for failing to object to instances of prosecutorial misconduct. We conclude Middleton fails to demonstrate that trial or appellate counsel could have raised a successful claim as the challenged comments did not amount to prosecutorial misconduct because the prosecutor's language refers to the prosecution as a whole or as a rhetorical device, *see Snow v. State*, 101 Nev. 439, 447-48, 705 P.2d 632, 638-39 (1985) (recognizing that prosecutor's use of "we" not improper when merely a rhetorical device); did not mischaracterize the equal and exact justice instruction; permissibly asked the jury to consider the victims' final moments, *see Williams v. State*, 113 Nev. 1008, 1020, 945 P.2d 438, 445 (1997), *overruled on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000); permissibly described Middleton and his actions as evil to express the gravity of the charges, *Browning v. State*, 124 Nev. 517, 534, 188 P.3d 60, 72 (2008); permissibly responded to the defense's argument that the jury should

choose a life sentence to prove Nevada citizens were "enlighten[ed]"; and the prosecutor did not attempt to inflame the jurors but instead argued permissibly pursuant to *Domingues v. State*, 112 Nev. 683, 698, 917 P.2d 1364, 1375 (1996).

Second, Middleton argues that trial and appellate counsel were ineffective for failing to object to several instances of prosecutorial misconduct wherein the State mischaracterized the evidence. Middleton fails to demonstrate that counsel were deficient or that he was prejudiced. The arguments concerning hair fiber evidence were supported by the record and not misleading; the prosecutor's implication that Middleton was untruthful about his ownership of the pink blanket was based on other evidence introduced at trial; the argument concerning the gag was a reasonable inference based on the evidence admitted at trial; and the prosecutor accurately portrayed the testimony of a witness who could not recall seeing the blanket in Middleton's possession after his move to Reno.

Third, Middleton argues that trial and appellate counsel were ineffective for failing to object to the prosecutor's argument concerning the forensics lab that shifted the burden of proof. We conclude that Middleton fails to demonstrate that counsel was deficient or that he was prejudiced. The prosecutor's argument did not impermissibly shift the burden of proof, but instead permissibly pointed out the strength of forensic testimony by noting that it was not impeached.

Fourth, Middleton argues that trial and appellate counsel were ineffective for neglecting to argue that the prosecutor committed repeated misconduct with respect to its arguments concerning Powell's death. Even assuming that counsel should have objected to these

SUPREME COURT
OF
NEVADA

(O) 1947A

19

comments, Middleton fails to demonstrate prejudice as overwhelming evidence supports his guilt for Powell's death. *See King v. State*, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000) (noting that prosecutorial misconduct may be harmless where there is overwhelming evidence of guilt).

Fifth, Middleton argues that trial and appellate counsel were ineffective for neglecting to argue that the prosecutor disparaged the defense by stating the defense sought to "[c]onfuse, shift, avoid, confess, defense." As it is misconduct for a prosecutor to "ridicule or belittle the defendant or the case," *Earl v. State*, 111 Nev. 1304, 1311, 904 P.2d 1029, 1033 (1995), this comment was improper, *see Browning*, 124 Nev. at 534, 188 P.3d at 72 (a prosecutor's disparagement of defense counsel or the legitimate tactics of defense counsel is improper conduct). Nevertheless, Middleton fails to demonstrate that counsel's failure to object or challenge the comment on appeal was unreasonable. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006); *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994) (observing that decision whether to object to prosecutorial misconduct is a strategic one and "must take into account the possibility that the court will overrule it and that the objection will either antagonize the jury or underscore the prosecutor's words in their minds"). Given the brevity of the comment and its lack of relation to any argument of counsel regarding the evidence at trial, it did not "so infect[ ] the proceedings with unfairness as to make the results a denial of due process." *Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002). Moreover, given the aforementioned evidence of Middleton's guilt, he fails to demonstrate that the comment affected the outcome of the trial.

Sixth, Middleton argues that trial and appellate counsel were ineffective for neglecting to argue that the prosecutor improperly argued that Middleton was the "Prince of Darkness" and "no Jesus of Nazareth," and further, that trial counsel improperly embraced the arguments. In his first postconviction petition, Middleton argued that trial counsel were ineffective for failing to object to the prosecutor's comments. Therefore, Middleton's claim that postconviction counsel was deficient for failing to raise this claim is belied by the record. Moreover, this court has previously concluded that Middleton was not prejudiced by the comment or counsel's method of addressing it. *See Middleton v. State*, Docket No. 50457 (Order of Affirmance, June 16, 2009).

Seventh, Middleton argues that trial and appellate counsel were ineffective for neglecting to argue that the prosecutor improperly argued that the anti-mercy instruction required that Middleton receive the same mercy he showed the victims. While two of the challenged arguments were not improper, the third argument, which implied that Middleton deserved the same sympathy he showed the victims, was improper. *See Thomas v. State*, 120 Nev. 37, 48-49, 83 P.3d 818, 826 (2004) (holding it is improper for a prosecutor to argue that a defendant is "deserving of the same sympathy and compassion and mercy that he extended to [the victims]"); *see also Lesko v. Lehman*, 925 F.2d 1527, 1545 (3d Cir. 1991) (concluding that prosecutor's argument that the jury make death penalty determination in same "cruel and malevolent manner shown by the defendants" when they killed the victims was improper). Nevertheless, Middleton fails to demonstrate prejudice because the decision between life and death was not close and therefore there was not

SUPREME COURT
OF
NEVADA

(O) 1947A

a reasonable probability of a different outcome at trial or on appeal given the circumstances of the murders, the compelling aggravating circumstances found for each murder, and Middleton's unpersuasive mitigation case.

Eighth, Middleton contends that trial and appellate counsel were ineffective for neglecting to argue that the prosecutor improperly emphasized improper testimony to urge the jury not to consider mitigation testimony. We conclude that Middleton fails to demonstrate that the district court erred in denying this claim. Middleton fails to identify a particular passage which constitutes misconduct, nor is it apparent from the cited record. *See Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 997, 860 P.2d 720, 725 (1993); *Maresca v. State,* 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (holding that it is appellant's responsibility to provide cogent argument).

Ninth, Middleton argues that trial and appellate counsel were ineffective for neglecting to argue that the prosecutor improperly referred to his presentation of mitigation evidence as a "ploy." As the reference improperly belittles the defense, *see Earl,* 111 Nev. at 1311, 904 P.2d at 1033, the comment was improper, *see Browning,* 124 Nev. at 534, 188 P.3d at 72. Nevertheless, Middleton fails to demonstrate that counsel were ineffective for not challenging the comment because the decision between life or death was not close and therefore there was not a reasonable probability of a different outcome at trial or on appeal.[12]

---

[12]Middleton also contends that postconviction counsel were ineffective for failing to re-raise issues of misconduct that this court

*continued on next page...*

*Cumulative error*

Middleton contends that, although postconviction counsel claimed in the district court proceedings that the cumulative effect of trial counsel's errors prejudiced Middleton, appellate postconviction counsel failed to challenge the district court's denial of the claim on appeal. Middleton did not raise this claim below. Therefore, such a claim is not properly before this court. *See Davis v. State*, 107 Nev. 600, 606, 817 P.2d 1169, 1173 (1991) (noting that this court will not consider grounds for relief not raised in the original postconviction petition), *overruled on other grounds by Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004).

*Conclusion*

As discussed above, Middleton fails to demonstrate that trial and appellate counsel performed deficiently or that he was prejudiced by trial counsel's failure to investigate, object to, or challenge evidence or appellate counsel's failure to raise certain arguments on appeal. As Middleton has not demonstrated that trial and appellate counsel were ineffective, he fails to demonstrate that postconviction counsel could have raised any meritorious claims in his prior petition. Therefore, we conclude that the district court did not err in concluding that Middleton's claims of

---

*...continued*

addressed on direct appeal in arguing cumulative error. We conclude that Middleton fails to demonstrate that any instance of prosecutorial misconduct, whether considered individually or cumulatively, would have so infected the proceedings with unfairness as to deny him due process, *see Hernandez*, 118 Nev. at 525, 50 P.3d at 1108, and thus form the basis of a meritorious claim of ineffective assistance of counsel.



ineffective assistance of postconviction counsel lacked merit, and therefore, were insufficient to overcome the procedural bars.[13]

*Actual innocence*

Middleton contends that he is actually innocent of first-degree murder due to a faulty first-degree murder instruction and actually innocent of the death penalty based on the invalidity of two aggravating circumstances and the weighing instruction.

When a petitioner cannot demonstrate good cause, the district court may nonetheless excuse a procedural bar if the petitioner demonstrates that failure to consider the petition would result in a fundamental miscarriage of justice. *Berry v. State*, 131 Nev., Adv. Op. 96, 363 P.3d 1148, 1154 (2015); *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001). This requires the petitioner to present new evidence of his innocence. *See House v. Bell*, 547 U.S. 518, 537 (2006) ("[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthiness eyewitness account, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)); *Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

---

[13]The State pleaded laches under NRS 34.800. Although Middleton demonstrates that he could not have raised his claims earlier, *see* NRS 34.800(1)(a), he has not demonstrated a fundamental miscarriage of justice. *See* NRS 34.800(1)(b).

SUPREME COURT
OF
NEVADA

(O) 1947A

We conclude that Middleton's arguments lack merit. First, even assuming that the jury instructions were flawed, that instructional error does not establish that Middleton is actually innocent of first-degree murder, which requires a showing that he is factually innocent. *Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) (observing that "[a]ctual innocence means factual innocence, not mere legal insufficiency" (internal quotation marks omitted)). Second, even if Middleton demonstrated that two of his aggravating circumstances were invalid, three remain regarding Powell's murder and two remain regarding Davila's murder. Therefore, he would nevertheless be death eligible and his actual-innocence claim on this ground fails. *See Lisle*, 131 Nev., Adv. Op. 39, 351 P.3d at 731-33; *see also* NRS 200.030(4)(a). Third, a gateway claim that a petitioner is actually innocent of the death penalty must focus on the elements of the crime and the aggravating circumstances. *See Lisle*, 131 Nev., Adv. Op. 39, 351 P.3d at 732. Middleton's claim regarding the weighing instruction is not an appropriate basis for an actual innocence claim. *See id.* at 733-34. Further, this court concluded in *Nunnery v. State*, 127 Nev. 749, 772, 263 P.3d 235, 253 (2011), that the weighing of aggravating and mitigating circumstances is not a factual determination and thus it is not subject to the beyond-a-reasonable-doubt standard, *see Kansas v. Carr*, ___ U.S. ___, 136 S. Ct. 633, 642 (2016) (concluding that the weighing of aggravating and mitigating circumstances is not subject to the beyond-a-reasonable-doubt standard).

Having considered Middleton's contentions and concluded that he is not entitled to relief,[14] we

ORDER the judgment of the district court AFFIRMED.[15]

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

cc:    Second Judicial District Court Dept. 10
       Federal Public Defender/Las Vegas
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

---

[14]We deny Middleton's motion for limited remand as he seeks to enlarge the record, which is inappropriate under SCR 250(8)(b).

[15]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.